The father appeals from a decree by a judge of the Juvenile Court terminating his parental rights and dispensing with the need for his consent to the adoption of his daughter, Xola. See G. L. c. 210, § 3. The father claims the judge abused his discretion in allowing the mother to testify telephonically, and that several of the judge's factual findings were clearly erroneous.[3] We affirm.
Background. After hearing testimony from the father, the mother, two social workers, and the foster mother, the judge made eighty-five findings of fact which were "both specific and detailed, demonstrating, as we require, that close attention was given to the evidence." Adoption of Don, 435 Mass. 158, 165 (2001). We summarize his findings.
The mother and father began dating in 2011 and moved in together in 2012. At that time, Mary,[4] the mother's child from another relationship, was approximately two years old. The relationship of the mother and the father was marked by mental, verbal, and physical abuse. They argued three to four times a day. The mother and the father engaged in physical violence with one another every two or three days. Some of the physical violence occurred while the mother was pregnant with Xola, and much of it was witnessed by Mary. Xola was born in December, 2013.
On January 31, 2014, two reports were filed pursuant to G. L. c. 119, § 51A (51A report), alleging that the father had locked the mother and four year old Mary out of their residence in ten-degree weather while he remained inside with newborn Xola. The father did not open the door for responding police officers. Following an investigation, the Department of Children and Families (DCF) "supported the claim of neglect" against both parents. DCF provided the parents with an emergency service plan wherein they agreed to live separately. However, on February 18, 2014, DCF received another 51A report alleging that the parents were again living together, that neither parent was employed, and that "neither child was in daycare or school so there were no eyes on the children in the community." The next day, DCF conducted an emergency removal of the children.
After the removal, the father's service plans included the following tasks: (1) meet monthly with a social worker; (2) sign all releases; (3) complete parental fitness and psychological evaluations; (4) obtain and maintain a stable living environment that would be suitable for a child; (5) consistently participate in mental health treatment; and (6) develop an understanding of how his past domestic violence affected Xola. The father engaged in some services through the summer of 2014. However, in January, 2015, the father permanently relocated to Florida. He did not engage in services there, and he never obtained housing appropriate for a child. The father had had no contact with Xola for well over a year when, just prior to trial, he attended less than one and one-half hours of his scheduled two-hour visit with Xola. He did not maintain consistent contact with DCF, never allowed the assigned social worker to visit any of his residences, and did not consistently engage in individual therapy. The father considered his service plan tasks to be "ridiculous," but, at the time of trial, he acknowledged that he was not prepared to parent Xola.
Discussion. The mother filed a motion in limine seeking permission to testify by telephone because she resided in Arizona at the time of trial. After a hearing, the judge allowed the motion over the father's objection. The father claims the judge abused his discretion in doing so. We disagree. It is well established that a judge has broad discretion to allow telephonic testimony in termination of parental rights proceedings. See Adoption of Thea, 78 Mass. App. Ct. 818, 826 (2011). We discern no abuse of that discretion where the mother's location posed logistical difficulty (and would have caused her to incur considerable expense) in presenting her testimony in court, and the father had ample opportunity to cross-examine her. We note also that the mother's testimony, which focused primarily on the history of domestic violence in her relationship with the father, was cumulative of other evidence presented at trial, including the father's admitted violent conduct.
The father also claims error in several of the judge's findings. Specifically, he challenges the findings that DCF provided the father with services, that domestic violence would continue to be a problem for the father, and that the father refused to testify to the details of an order entered against him pursuant to G. L. c. 209A (209A order). He further claims that the judge improperly admitted and relied on Mary's and Xola's hearsay statements and the mother's telephonic testimony, and drew negative inferences from the father's refusal to testify about his mental health. The father does not challenge the judge's finding that he was unfit to parent Xola, and does not argue that termination is not in Xola's best interests.
We see no error in the judge's findings. Both parents acknowledged the history of physical violence in their relationship. It is clear from the record that the father knew how to obtain the services identified by DCF, but did not follow through with those services. The judge's findings that the father "belie [ves] that he does not require any services, that his prior actions are justified or are entirely the fault of [the mother], and that the DCF service plan is ridiculous," are supported by the record. From these facts, the judge properly concluded that the father's continued refusal to acknowledge his role in the violence, or to engage in services, "ma[k]e it unlikely that [he] would address [his] problem in the near future or that [his] parenting abilities would improve, [placing Xola] at risk of further neglect if returned to [his] custody." Adoption of Mario, 43 Mass. App. Ct. 767, 772 (1997).
In addition to the history of domestic violence, the father testified that his housing was not appropriate for a child, that he was not employed, and that he was not then able to parent Xola. Further, once Xola was in DCF custody, the father visited with her inconsistently, and not at all between January, 2015, when the father moved to Florida, and March, 2016, when he returned for the trial. In light of this compelling evidence of unfitness, we need not address the merits of the claimed errors regarding (1) the children's "hearsay" statements, (2) the mother's testimony, (3) evidence concerning the 209A order, and (4) the father's mental health history, because there was ample other evidence supporting the judge's conclusion. Nevertheless, we do so in the margin.[5]
Taken together, the judge's findings "prove clearly and convincingly that the [father is] currently unfit to provide for the welfare and best interests of" Xola. Adoption of Quentin, 424 Mass. 882, 886 (1997). "We see no basis for disturbing the judge's view of the evidence," ibr.US_Case_Law.Schema.Case_Body:v1">id. at 886 n.3, and no reason not to afford the judge's decision the "substantial deference" to which it is entitled. Adoption of Talik, 92 Mass. App. Ct. 367, 370 (2017).
Decree affirmed.

Before trial, the mother stipulated to her unfitness and to the termination of her parental rights. She is not a party to this appeal.

A pseudonym.

We note that the children's out-of-court statements were not hearsay because they were not offered to prove the truth of their content, but to establish the children's state of mind. In any event, they "were not necessary to support a conclusion of parental unfitness." Adoption of Quentin, 424 Mass. 882, 889 (1997). The father's arguments concerning the mother's testimony "amount to no more than dissatisfaction with the judge's weighing of the evidence and his credibility determinations." Id. at 886 n.3. While the father testified to the existence of the 209A order, his answers to questions regarding the basis for that order were nonresponsive. Finally, the judge properly inferred from the father's refusal to testify on the subject of his mental health issues that the father has such issues that "are implicated in his unwillingness and/or inability to remedy the conditions of his behaviors, actions, and history which led to the case being filed and which present risk of harm to [Xola]."